## WALKER v. HELMS.

Opinion delivered December. 23, 1907.

LIMITATION—TITLE ACQUIRED BY.—Where a purchaser of land at tax sale had been in actual possession of the land under a tax deed for more than two years, he acquired title, regardless of the validity of the tax sale; and the fact that he took a quitclaim deed to his wife from the original owner did not divest his title, as the latter had no title to convey.

Appeal from Monroe Chancery Court; *John M. Elliott,* Chancellor; reversed.

*H. A. Parker,* for appellants.

1. W. F. Stevens, by virtue of possession for more than two years under a valid tax deed, had acquired a perfect title to the 60-acre tract before Hoard executed the quitclaim to Steven's wife. Kirby's Dig. § 5061; 59 Ark. 460; 60 Ark. 499; *Id.* 163; 57 Ark. 523; 58 Ark. 151; 53 Ark. 418; 71 Ark. 117; *Id.* 390; 75 Ark. 514; 80 Ark. 82; 80 Ark. 435; 80 Ark. 181; 78 Ark. 99; 34 Ark. 541. See, also, 79 Ark. 194; *Id.* 364; 80 Ark. 575; 83 Ark. 534.

2. There was no delivery of the Hoard deed to Mary I. Stevens; and if there had been, she could not have acquired thereby any more title than he had.

*Thomas & Lee,* for appellees:

1. Delivery of the deed to W. F. Stevens was a sufficient delivery to his wife, Mary I.

2. It is clearly shown that the execution of the deed to Mary I. Stevens was at the request of W. F. Stevens, and, even if there had been no consideration moving from her (although her joining in the conveyance of the 160-acre tract was a sufficient consideration), it will be treated as a voluntary settlement upon her by the husband, and the conveyance is valid. 20 Ark. 265; 36 Ark. 586; 75 Ark. 131; 44 S. W. 397; 47 Ark. 111; 46 Ark. 542.

McCULLOCH, J. This action was commenced at law to recover possession of a tract of land in Monroe County containing 60 acres and, by consent of all parties, the cause was transferred to the chancery court, where it proceeded to final decree in favor of the plaintiff for recovery of the land sued for.

The case involves a controversy concerning the title to the land betwen the appellees, Sibbie Stevens Helms and Lecil Stevens, children of W. F. Stevens and his first wife, Mary I. Stevens, both deceased, and the appellants, Maude Walker, widow of said W. F. Stevens, and Oliver Stevens, the offspring of her intermarriage with Stevens.

Appellees claim that the title to the land was in their mother, Mary I. Stevens, and that they inherited it from her; and ap-

pellants claim that the title was in W. F. Stevens, that it was his homestead at the time of his death, that his widow is entitled to her homestead rights therein, and that the title in fee descended to the three children of W. F. Stevens.

The pleadings and evidence establish the following as the facts of the case, there being no dispute over the facts:

The quarter-section of land, of which the 60 acres in controversy formed a part, was originally owned by Thomas Hoard of Murfreesboro, Tennessee, who received a patent for it in 1861, and it was sold for taxes in 1877, and purchased by J. Cole Davis, who in due time, the land not being redeemed within the time prescribed by law, received a deed in proper form from the county clerk of Monroe County conveying the land to him pursuant to the tax sale. Davis conveyed the land to W. F. Stevens in 1881. The latter at once entered into actual possession, and cleared up, put a part of it in cultivation, and built a house on it, and occupied it as his homestead from then until his death. All the improvements were on the 60 acres in controversy.

In 1886, T. E. Hoard, sole heir of Thomas Hoard, executed a deed in Mary I. Stevens, quitclaiming to her all his interest in the land in controversy, and at the same time W. F. Stevens and wife, Mary I., executed to Hoard a deed quitclaiming to him all their interest in the other 100 acres in the quarter section. Each of these deeds recited a consideration of one dollar in money and the execution of the quitclaim from each to the other.

The quitclaim deed from Hoard was by W. F. Stevens, during the lifetime of his wife, Mary, delivered to his sister, Mrs. Hill, with instructions to keep it until he called for it. He never called for it, and two years after his death one of the appellees procured it from Mrs. Hill and caused it to be placed of record.

Mary I. Stevens died in 1892. Subsequently W. F. Stevens intermarried with appellant, Maude (now Mrs. Walker), and he died in 1901, leaving surviving his widow and three children named above.

The title to the land in controversy was unquestionably in W. F. Stevens. His grantor, Davis, purchased it at tax sale,

and no attack is made, either in the pleadings or proof, on the validity of the sale. The deed is exhibited with appellant's pleadings, and was introduced in evidence, and its validity was not questioned.

Besides, W. F. Stevens had been in actual possession of the land under the tax title for about five years when the Hoard quitclaim was executed, and this operated as a complete investiture of title by limitation. *Hudson* v. *Stillwell,* 80 Ark. 575; *Jacks* v. *Chaffin,* 34 Ark. 541.

The title being in W. F. Stevens, the quitclaim of Hoard to Mary I. Stevens conveyed nothing. Hoard had nothing to convey. There is no evidence or indication on the part of W. F. Stevens that he intended to settle the title to the land upon his wife, and the quitclaim itself was ineffectual for that purpose. The authorities cited by counsel for appellees, reciting instances where the husband or wife have in various methods conveyed or caused to be conveyed lands to the other as gifts or settlements, do not apply here.

Nor is there any element in the conduct of W. F. Stevens which would estop him or his heirs to assert that the title was vested in him and remained in him up to the time of his death. It is evident that in the transaction with Hoard he merely "purchased his peace" by quitclaiming his interest in 100 acres of his land, and that Hoard in return quitclaimed to Mrs. Stevens his interest, which amounted to nothing, in the 60 acres in controversy. This did not change, in anywise, the status of the title to the land in controversy.

We find nothing, therefore, in the record to sustain the decree, and the same is reversed and remanded with directions to enter a decree in accordance with this opinion. It is so ordered.